[Sac. No. 1526.    In Bank.—November 18, 1909.]

## GENERAL CONFERENCE OF FREE BAPTISTS (a Corporation), Appellant, v. T. H. BERKEY et al., Respondents.

FOREIGN CORPORATION,—INCORPORATION FOR RELIGIOUS PURPOSES—INCIDENTAL POWER TO BUY AND SELL PROPERTY.—A foreign corporation, organized for "religious, missionary, educational and charitable" purposes, with power, to be exercised in subordination to such main purposes, of acquiring and selling property, but without power to enter into the business of buying and selling property for the purpose of advancing the pecuniary profit of the corporators, is, in all essential particulars, similar in character to the corporations described in section 593 of the Civil Code, which are authorized to be formed "for any purpose, where pecuniary profit is not their object."

ID.—TRANSACTING BUSINESS WITHIN STATE—CONDITIONS IMPOSED BY CONSTITUTION.—The phrase "to transact business," as used in section 15 of Article XII of the constitution, providing that no foreign corporation "shall be allowed to transact business within this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state," is equivalent to the words "to do business."

ID.—DOING OF SINGLE ACT—EXERCISE OF INCIDENTAL POWER.—Even if such a foreign corporation may come within the purview of that provision of the constitution by the doing of a single act, such act must be one of the ordinary business of the corporation, and not an act done in the exercise of a power merely incidental to the main purposes of its incorporation.

ID.—SINGLE SALE OF LAND—AUTHORIZATION OF COURT UNNECESSARY.—The single sale by such foreign corporation of land in this state is not the transaction of business by it, within the meaning of such provision of the constitution, and it is, therefore, not essential to the validity of such sale, that an application for leave to make it had been made to or granted by the superior court, in accordance with the requirements of section 598 of the Civil Code applicable to domestic corporations.

APPEAL from an order of the Superior Court of Sacramento County refusing a new trial.    J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

Dudley Kinsell, for Appellant.

Devlin & Devlin, for Respondents.

SLOSS, J.—The plaintiff, a corporation organized under the laws of the state of Maine, appeals from an order denying its motion for a new trial.

The action is one to quiet title to a lot in the city of Sacramento. There were several defendants, all of whom, except the respondent Berkey, disclaimed or suffered default. Berkey answered alleging title in himself, and, further, setting up certain facts which, as he claimed, estopped the plaintiff from asserting title adversely to him. The court found in his favor on both defenses.

At the trial it was stipulated that on the first day of February, 1902, one S. P. Meads was the owner of the property. The plaintiff offered in evidence a deed of grant, bargain, and sale, whereby said Meads, on the last-named date, conveyed the said premises to plaintiff. After introducing a duly certified copy of its charter or articles of incorporation, and showing compliance with the requirements of section 405 of the Civil Code, the plaintiff rested.

The defendant Berkey offered in evidence a deed bearing date the fourteenth day of April, 1903, whereby the General Conference of Free Baptists, plaintiff herein, purported to grant, bargain, and sell to T. H. Berkey (the respondent) the property in question. This deed was signed on behalf of the corporation by its president and secretary and bore the corporate seal. Objection to its introduction in evidence was made on the ground that it had not been shown that before the execution of the instrument application for leave to sell the property had been made to or granted by the superior court of the county of Sacramento. The objection was overruled and plaintiff excepted.

This deed, if sufficient to convey title, fully sustains the finding in favor of Berkey's ownership. The appellant makes no point other than that involved in the objection to the admission of the deed which could affect this finding or the judgment based on it. If, then, the deed was properly admitted in evidence, it will be unnecessary to consider whether or not the defense of estoppel was made out.

The plaintiff was incorporated by an act of the legislature of the state of Maine, approved January 19, 1891. [Laws Me., 1891, p. 3.] Section 1 of the act provides that Oren B. Cheney, and twenty-six other persons named, "their associates

and successors, are hereby constituted a corporation for relig-
ious, missionary, educational and charitable purposes under
the name of the General Conference of Free Baptists, and by
that name shall have power to prosecute and defend suits at
law, to use a common seal and to change the same at pleasure,
to take and hold for the objects of said corporation by gift,
grant, bequest, purchase or otherwise, any estate, real or per-
sonal, or both, the annual income of which shall not exceed
one hundred thousand dollars, and to sell and convey any
estate, real or personal, or both, which the interests of said
corporation may require to be sold and conveyed." Section
593 of the Civil Code of California, a part of title XII, headed
"religious, social and benevolent corporations," authorizes the
incorporation of any number of persons, "for any purpose
where pecuniary profit is not their object and for which indi-
viduals may lawfully associate themselves." Section 598 of
the same code provides that corporations of the character
mentioned in section 593 may sell the real property held by
them upon obtaining an order for that purpose from the
superior court held in the county in which the property is
situated. The section provides for the filing of a petition
for leave to sell such real estate and the giving of notice by
publication of such application. Section 593 deals with the
formation of corporations in this state, and section 598, apply-
ing by its terms to corporations of the character mentioned
in section 593, is intended, so far as its language goes, to refer
only to domestic corporations. The sole question, then, is
whether the terms of section 598 are made applicable to the
plaintiff corporation by the provision of section 15 of article
XII of the constitution of this state, that "no corporation
organized outside the limits of this state shall be allowed to
transact business within this state on more favorable condi-
tions than are prescribed by law to similar corporations or-
ganized under the laws of this state." Whether this provision
is self-executing or is addressed to the legislature alone as a
prohibition against the passing of laws affirmatively giving
superior privileges to foreign corporations, is a question which
may be open to doubt. (See *Uihlein* v. *Caplice Com'l Co.*
(Mont.), 102 Pac. 564; *First Nat. Bank* v. *Weidenbeck,* 97
Fed. 896, [38 C. C. A. 131] ; *Coler* v. *Tacoma R. & P. Co.,* 65
N. J. Eq 347, [103 Am. St. Rep. 786, 54 Atl. 413].) It need

not be here decided. For the purposes of this appeal we shall assume that the constitutional provision is self-executing, and that by its own force it attaches to such transactions of foreign corporations as are within its scope the restrictions imposed upon similar domestic corporations.

It seems clear that the plaintiff herein is a corporation similar in character to those whose creation is authorized by section 593 of the Civil Code. That section authorizes incorporation of persons for any purpose "where pecuniary profit is not their object." The purposes for which the plaintiff was organized are defined in its charter as "religious, missionary, educational and charitable," and the power granted to it to acquire and sell property is a power to be exercised in subordination to the main purposes for which the corporation is created. The act of incorporation does not confer any power to enter into the business of buying and selling property for the purpose of advancing the pecuniary profit of the corporators. The corporation is, therefore, in all essential particulars, similar in character to those described in section 593.

It remains to be considered, then, whether a sale of real estate by such a corporation is a transaction of business by it within the meaning of the constitutional provision above referred to. The phrase "to transact business," as used in this provision, is equivalent to the words, "to do business," found in the statutes of many states, prohibiting a foreign corporation from "doing business" in such states until it has filed a certificate designating a place of business and a resident agent upon whom process may be served, or complied with other conditions. (See, for example, Civ. Code, secs. 405-408.) There have been many decisions construing the words "doing business," under such statutes, and the cases upon the subject are not in harmony. In most jurisdictions it is held that such statutes have reference to a continuation in some form of business, and do not apply where a foreign corporation does a single act of business within the state. (3 Clark & Marshall on Private Corporations, sec. 846, and cases cited.) There are decisions, however, which hold that a foreign corporation may come within the purview of such statutes by the doing of a single act. (See, for example, *Farrior* v. *Security Co.*, 88 Ala. 275, [7 South. 200].) But even in the states which announce this doctrine it is held that the single act which

will bring the corporation within the purview of the statute must be an act of the ordinary business of the corporation. In the language of the supreme court of Alabama, "There must be a doing of some of the works, or an exercise of some of the functions, for which the corporation was created, to bring the case within that clause." (*Beard* v. *Union etc. Co.,* 71 Ala. 60; *Sullivan* v. *Timber Co.,* 103 Ala. 371, [15 South. 941].) Thus, a statute of this kind has been held not to apply to the soliciting and receiving of subscriptions for a newspaper published in another state, by a corporation organized under the laws of that other state (*Beard* v. *Union etc. Co.,* 71 Ala. 60); to the care of unused property and payment of taxes thereon (*Sullivan* v. *Timber Co.,* 103 Ala. 371, [15 South. 941]); the owning and leasing of its land in the state for agricultural purposes by a foreign corporation organized for the purpose of mining and selling, handling, and manufacturing coke (*Missouri Coal & Mining Co.* v. *Ladd,* 160 Mo. 435, [61 S. W. 191]); the soliciting by a foreign corporation of subscriptions to its capital stock (*Payson* v. *Withers,* 5 Biss. 269, [Fed. Cas. No. 10,864]); or the making by a foreign corporation within the state of a contract adjusting a judgment debt arising out of business transacted outside the state. (*Security Co.* v. *Panhandle National Bank,* 93 Tex. 575, [57 S. W. 22].)

We think the single sale of property by the plaintiff in the case at bar comes within the principle of the cases last cited. This corporation was certainly not engaged in the *business* of buying and selling land. As we have said, in another connection, its charter plainly indicates that the power conferred upon it to make such purchase and sale was not granted for the purpose of enabling it to do such acts as a means of making a profit thereon. The buying and selling permitted to it were merely incidental to the carrying on of the main purposes of the corporation. A distinction is to be drawn between the purposes of a corporation and its powers. (*Floyd* v. *Perrin,* 30 S. C. 1, 12, [8 S. E. 14].) The *purposes* of the plaintiff, as defined in the articles of incorporation, are "religious, missionary, educational and charitable." As incidental to these purposes it is granted a variety of *powers,* i. e. the power to prosecute and defend suits at law, the power to use a common seal, the power to take and hold for the objects of said

corporation any real or personal property, and the power to sell and convey any estate which the interests of the corporation may require to be sold and conveyed. All of these powers are to be exercised in subordination to the main purposes as first declared. The purchase and sale of property by such a corporation is not one of the ends for which it is organized, but is merely a means to enable it to accomplish those ends. Property is to be acquired only for the objects of the corporation, and to be sold only when the interests of the corporation require such sale. The power to sell property by a corporation of this character is as purely incidental to the prosecution of its main purposes as are the other powers enumerated in the charter, as, for example, the power to prosecute and defend suits at law. It is quite generally held that the mere prosecuting or defending of suits by a foreign corporation is not doing business within the meaning of statutes of the kind we have been discussing. (Clark & Marshall on Private Corporations, sec. 860; *Utley* v. *Clark-Gardner Lode Mining Co.,* 4 Colo. 369; *Mandel* v. *Swan Land Co.,* 154 Ill. 177, [45 Am. St. Rep. 124, 40 N. E. 462]; *Ware Cattle Co.* v. *Anderson,* 107 Iowa, 231, [77 N. W. 1026]; *M. B. Faxon Co.* v. *Lovett,* 60 N. J. L. 128, [36 Atl. 692].)

If the construction we have put upon the charter of the plaintiff be correct, it must be held that the sale by such corporation of real estate is not the transacting of business by it within the meaning of the constitutional provision relied upon. It follows, therefore, that the objection to the admission in evidence of the deed to Berkey was properly overruled.

In the foregoing discussion we have assumed that section 15 of article XII of the constitution applies to all corporations, including those organized for purely religious or eleemosynary purposes. Under the views above expressed it is unnecessary to resolve any doubt that may exist on this point.

The order denying a new trial is affirmed.

Angellotti, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.

SHAW, J., dissenting.—I dissent. The opinion of the court assumes that the conveyance of this land was the only business

ever transacted in this state by the plaintiff corporation. The evidence does not show that this is true, and it does not appear from the record that any contention to that effect was presented to the court below. If such claim had been made, it is probable that the plaintiff could have shown that, in the accomplishment of its purposes in this state, it often advanced money to pay the price of lots upon which churches were to be built, took the title in trust for the local congregation, to be reconveyed as soon as the money advanced was repaid, precisely as it did in this case, and that this was only one of many similar transactions. The evidence indicates that the plaintiff was accustomed to do this, though no other specific instances were proven, and that, so far as it may be said to do business at all, business of this kind, and the obtaining of money therefor, constituted its principal occupation.

If the opinion had been based on the ground that benevolent enterprises of this character are not within the meaning of the constitutional provision that a foreign corporation may not "transact business" in this state, on more favorable terms than domestic corporations, and that that provision referred only to corporations for gain, I should not be disposed to differ with my associates. But as the opinion does not discuss this question I express no opinion concerning it.

Rehearing denied.