Filed 5/31/13  Thomas v. Bank of America CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RUDIE THOMAS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant and Respondent. | D061012<br><br><br>(Super. Ct. No. 37-2009-00073376-CU-OR-SC) |

APPEAL from a judgment of the Superior Court of San Diego County, William S. Cannon, Judge.  Affirmed.

David A. Kay for the Plaintiff and Appellant.

The Ryan Firm, Timothy M. Ryan and Michael W. Stoltzman, Jr., for Defendant and Respondent.

INTRODUCTION

Rudie Thomas appeals from a judgment dismissing his second amended complaint (SAC) for wrongful foreclosure related causes of action after the trial court sustained a demurrer to it without leave to amend. Thomas asserts numerous grounds of error. We conclude none of them has merit and affirm the judgment.

BACKGROUND

Because this appeal arises from the sustaining of a demurrer, we summarize the underlying facts stated in the SAC. We accept as true the SAC's properly pleaded material factual allegations and facts properly judicially noticed. (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 435-436 (*Debrunner*).)

In March 2006 Thomas borrowed over $600,000 from Resmae Mortgage Corporation (Resmae). The loan was secured by a trust deed on real property. The trust deed was recorded evidencing the secured loan. The trust deed identified Chicago Title Company as the trustee and Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee beneficiary for Resmae.[1]

---

[1] " 'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.' [Citation.] 'A side effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS

2

On August 24, 2007, MERS assigned the trust deed and promissory note to LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-RM2 (LaSalle). The assignment was recorded on October 1, 2007.

On August 15, 2007, LaSalle recorded a default notice alleging the obligations secured by the trust deed had been breached. The same day, Wilshire Credit Corporation, on LaSalle's behalf, executed a substitution of trustee substituting Quality Loan Service Corporation (Quality) as trustee under the trust deed. The substitution of trustee was recorded on November 21, 2007.

A notice of trustee's sale was issued on November 16, 2007. On April 29, 2008, Quality issued a trustee's deed upon sale indicating Quality sold the secured property to LaSalle at a public auction on April 28, 2008. The trustee's deed was recorded on May 5, 2008.

In January 2009 Thomas filed a complaint to quiet title to the real property and for injunctive relief.[2] In April 2009 he filed an amended complaint alleging the same causes of action. Bank of America demurred to the amended complaint, arguing in part that the amended complaint failed to state a claim because Thomas had not alleged he had

---

members is unknown to those outside the MERS system.' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1151-1152 (*Gomes*).)

[2] The complaint named LaSalle as the defendant. The parties stipulated LaSalle merged into and with Bank of America, N.A. (Bank of America) effective October 17, 2008. They also stipulated Bank of America is the proper defendant in this matter. The trial court accepted the stipulation and amended the defendant's name accordingly. We refer to LaSalle in our summary and discussion because its name appears on the key documents.

tendered or attempted to tender the amount he owed on the promissory note. The trial court overruled the demurrer and Bank of America answered the complaint.

In August 2011 Thomas obtained leave to file the SAC. The SAC contained five causes of action: one to set aside the trustee's sale and cancel the trustee's deed, one for cancellation of recorded instruments, two to quiet title, and one for declaratory relief. The SAC generally alleged the trustee's sale was void because it was predicated on void documents. More specifically, the SAC alleged:

1.     The assignment of the trust deed and promissory note to LaSalle was void because it contained a forged notary acknowledgment.

2.     The assignment of the trust deed and promissory note was void because MERS was not authorized to do business in California at the time.

3.     The assignment of trust deed and promissory note was void because the person who executed the assignment for assignor MERS was actually an employee of assignee LaSalle's loan servicer.

4.     The assignment of the promissory note was void because MERS had no beneficial interest in the promissory note to assign. Its only beneficial interest was in the trust deed.

5.     The substitution of Quality as trustee was void because MERS had not yet assigned the trust deed and promissory note to LaSalle at the time the substitution of trustee was executed.

6.     The substitution of trustee was void because it contained a forged notary acknowledgment.

4

Bank of America demurred to the SAC, arguing Thomas's allegations were not sufficient to state a cause of action. Bank of America also reiterated its argument Thomas was obliged and failed to allege he had tendered or attempted to tender the amount he owed on the promissory note. The trial court agreed with Bank of America's arguments, including its tender argument, and sustained the demurrer without leave to amend.

DISCUSSION

I

*Standard of Review*

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' [Citation.] 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.] In reviewing the complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' [Citation.]

"Further, '[i]f the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. . . . If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . . The plaintiff has the burden of proving that an amendment

5

would cure the defect.' [Citation.] '[S]uch a showing can be made for the first time to the reviewing court . . . .' " (*Gomes*, *supra*, 192 Cal.App.4th at pp. 1153-1154.)

II

*Notice of Default*

The viability of Thomas's causes of action turns on whether any of the alleged documentary defects are actionable by him. Among these documentary defects, he contends the notice of default was void because LaSalle recorded it on August 15, 2007, but MERS did not assign the trust deed and promissory note to LaSalle until August 24, 2007. This contention was not asserted below. Generally, points not raised in the trial court cannot be asserted for the first time on appeal. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767; *People ex rel. Dept. of Transportation v. Superior Court* (2003) 105 Cal.App.4th 39, 46.)

To the extent Thomas raises this point on appeal to demonstrate his SAC stated a claim or could have been successfully amended to do so, his efforts fail because he has not alleged any facts or suggested he could allege any facts showing the delayed assignment prejudiced him. " '[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate [that] the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests.' (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 [*Fontenot*], citing *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258, [presumption that nonjudicial foreclosure sale was conducted regularly and fairly may be rebutted only by substantial evidence of 'prejudicial procedural irregularity'].)" (*Debrunner*, *supra*, 204 Cal.App.4th at p. 443.)

6

More particularly, he has not shown the delayed assignment impaired his ability to contest or avert the foreclosure sale. (*Id*. at pp. 443-444.) Although he argues the delayed assignment precluded him from being assured his payment of the arrearage amount would have resulted in the reinstatement of his loan or the redemption of the real property, he did not allege nor does he suggest he could allege he ever attempted to pay the arrearage amount or otherwise avert the foreclosure sale. Accordingly, he has not established his SAC stated or could be amended to state a claim based on the delayed assignment.

*Miller v. Cote* (1982) 127 Cal.App.3d 888 (*Miller*), upon which Thomas relies, does not alter our conclusion. The court in *Miller* held a notice of default was fatally defective in part because, at the time the notice was filed and recorded, no default had actually occurred and permitting premature filing of the notice would effectively shorten the statutory reinstatement period. (*Id.* at pp. 894-895.) Thomas does not claim he was not in default at the time the notice of default in this case was filed. He also does not claim the delayed assignment shortened the time for him to exercise his statutory reinstatement rights. *Miller*, therefore, has no application here.

III

*Assignment of Trust Deed and Promissory Note*

A

*Forged Notary Acknowledgment*

Thomas contends the assignment of the trust deed and promissory note was void because its notary acknowledgment was forged. Assuming, without deciding, Thomas

7

has adequately pleaded facts showing the notary acknowledgment was forged, such facts are not sufficient to state a claim. As Bank of America points out, an assignment of a trust deed does not have to be acknowledged by a notary to be valid. (*Lewis v. Booth* (1935) 3 Cal.2d 345, 349; *Osterberg v. Osterberg* (1945) 68 Cal.App.2d 254, 262.) It also does not have to be recorded to be valid. It is valid against anyone with actual notice of it, except a bona fide purchaser. (See *Farmers' Exchange Bank v. Purdy* (1900) 130 Cal. 455, 458; *Johndrow v. Thomas* (1947) 31 Cal.2d 202, 206; *Ahmad v. Wells Fargo Bank N.A.* (E.D. Cal. Mar. 30, 2011, No. CIV S-09-1200 JAM DAD PS) [2011 WL 1260054, at *9].)[3]

Civil Code section 2932.5, which requires an assignment to be duly acknowledged and recorded before an assignee may exercise the power of sale, does not affect our conclusion.[4] This code section only applies to mortgages. It does not apply to trust deeds. (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1509; *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 333-334; *Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 122.)

---

[3]    " 'Although we may not rely on unpublished California cases, the California Rules of Court do not prohibit citation to unpublished federal cases, which may properly be cited as persuasive, although not binding, authority.' " (*Gomes*, *supra*, 192 Cal.App.4th at p. 1155, fn. 6.)

[4]    Civil Code section 2932.5 provides: "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. *The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded*." (Italics added.)

## B

### *MERS Not Qualified to Conduct Business in California*

Thomas additionally contends the assignment of the trust deed and promissory note was void because MERS was not authorized to do business in California at the time of the assignment. Generally, a foreign corporation may not conduct intrastate business without first obtaining a certificate of qualification from the Secretary of State. (Corp. Code, § 2105, subd. (a).) A foreign corporation does not conduct intrastate business by "[c]reating evidences of debt or mortgages, liens or security interests on real or personal property." (Corp. Code, § 191, subd. (c)(7).) A foreign corporation also does not conduct intrastate business by engaging in activities necessary for "[t]he ownership of any loans and the enforcement of any loans by trustee's sale, judicial process or deed in lieu of foreclosure or otherwise." (*Id.*, subds. (d)(3) & (7).)

MERS's assignment of the trust deed and promissory note falls squarely within these exceptions. Thus, any failure by MERS to have a certificate of qualification from the Secretary of State at the time of the assignment did not invalidate the assignment. (See *Castaneda v. Saxon Mortg. Servs.* (2009) 687 F.Supp.2d 1191, 1195, fn. 3; *Ramirez v. Right-Away Mortg., Inc.* (N.D. Cal. Aug. 11, 2011, No. C 11-01839 WHA) [2011 WL 3515931, at *2].)

Moreover, even if MERS was required to have a certificate of qualification at the time of the assignment, its subsequent attainment of one in July 2010 retroactively validated its past activities. (See *United Medical Management Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1741 [upon qualifying, a foreign corporation has full legal

9

competency and its prior transactions have full legal effect]; *Hill v. Mortgage Elect. Registration Systems, Inc.* (C.D. Cal. Jan. 6, 2012, No. CV 11-8036-ODW (FFMx)) [2012 WL 94476, at *4]; *Adam v. Mortgage Electronic Registration Systems, Inc.* (C.D. Cal. Jan. 4, 2011, No. CV 10-7886 PSG (PLAx)) [2011 WL 63651, at *3]; *Perlas v. Mortgage Elec. Registration Systems, Inc.* (N.D. Cal. Aug. 6, 2010, No. C 09-4500 CRB) [2010 WL 3079262, at *7].)  Although Thomas contends, "there are still factual issues as to whether MERS paid taxes and penalties necessary to maintain the action," he did not raise this contention below and he has not offered any facts demonstrating he could successfully amend his SAC to allege such issues actually exist.  Therefore, he has not established his SAC stated or could be amended to state a claim based on MERS's corporate status at the time of the assignment.

C

*Not Signed by MERS Employee*

Thomas next contends the assignment was void because it was executed on MERS's behalf by an employee of assignee LaSalle's loan servicer rather than by a MERS employee.  Assuming Thomas's factual allegations on this point are true, they are unavailing because they do not preclude the possibility the person was, in fact, an agent of MERS and had the authority to execute the assignment for MERS.  (*Gill v. Wells Fargo Bank, N.A.* (E.D. Cal. June 20, 2011, No. 1:11-cv-00218 OWW GSA) [2011 WL 2470678, at *6]; see also *Frame v. Cal-Western Reconveyance Corp.* (D. Ariz. Sept. 2, 2011, No. CV-11-0201-PHX-JAT) [2011 WL 3876012, at *10].)

10

Although Thomas argues it would have been an obvious conflict of interest for the person to act as a dual agent, he does not cite any authority for this proposition. We, therefore, treat this argument as waived and pass it without consideration. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Thomas also asserts it was highly unlikely the person was a dual agent. Again, even if Thomas's postulate is correct, it falls short of demonstrating Thomas could successfully amend the SAC to state facts showing the person was not, in fact, acting as MERS's authorized agent when she executed the assignment. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270 [plaintiff has burden to affirmatively plead facts demonstrating an assignment of trust deed was improper].)

Thomas further asserts the equal dignities rule in Civil Code section 2309 required the person to have written authority to act on behalf of both parties and she did not. This argument is not cognizable on appeal because it was not raised below. (*Greenwich S.F., LLC v. Wong*, *supra*, 190 Cal.App.4th at p. 767; *People ex rel. Dept. of Transportation v. Superior Court*, *supra*, 105 Cal.App.4th at p. 46.) This point also does not persuade us Thomas could successfully amend his SAC to state a cause of action because, even if the equal dignities rule applied to the assignment, Thomas offers no factual allegations showing the person executing the assignment did not have the requisite written authority or that compliance with the equal dignities rule was not waived or ratified by the parties to the assignment.

## D

### *MERS's Lack of Beneficial Interest in Promissory Note*

Thomas further contends the assignment of the promissory note was void because MERS had no beneficial interest in the note to assign. Its only beneficial interest was in the trust deed. However, the lack of a beneficial interest in the note would not necessarily have prevented MERS from having the authority to assign it. Even if MERS had no assignable interest of its own, MERS could have assigned the note as the nominee or agent of the lender, who did possess an assignable interest, provided the agency agreement between MERS and the lender granted MERS such authority. (*Fontenot*, *supra*, 198 Cal.App.4th at pp. 270-271.)

Moreover, in order to establish a claim that LaSalle lacked authority to foreclose because it never received a proper assignment of the debt, it is not enough for Thomas to allege MERS's assignment of the promissory note to LaSalle was void. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 271.) Thomas must also allege facts showing LaSalle did not receive a valid assignment of the note in any other manner, including in an unrecorded document. (*Id.* at pp. 271-272.) As Thomas's SAC does not allege such facts and he has not demonstrated he could amend it to allege such facts, Thomas has not stated a cause of action based on LaSalle's lack of a valid interest in the note. (*Ibid.*)

Rather than discuss or attempt to distinguish *Fontenot*, *supra*, 198 Cal.App.4th 256, Thomas supports his contention with citations to *LaSalle Bank, N.A. v. Bouloute* (N.Y.S. 2010) 28 Misc.3d 1227 (A) [958 N.Y.S.2d 61] (unreported disposition) and *Landmark Nat. Bank v. Kesler* (2009) 289 Kan. 528 [216 P.3d 158]. We find these cases

unpersuasive because they do not purport to apply California foreclosure law and Thomas has not shown how the law they do purport to apply is analogous to California foreclosure law. (See, e.g., *Gomes*, *supra*, 192 Cal.App.4th at pp. 1155-1156 [cases from outside of California are inapposite because they do not apply California foreclosure law].)

E

*Lack of Prejudice*

Even if Thomas had or could allege specific facts showing the assignment of the trust deed and promissory note was void, he cannot state a cause of action unless he can also allege specific facts showing he was prejudiced by the assignment. (*Herrera v. Federal National Mortgage Assn.*, *supra*, 205 Cal.App.4th at pp. 1508-1509; *Fontenot*, *supra*, 198 Cal.App.4th at p. 272.) As the *Fontenot* court noted, "Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing [plaintiff's] obligations under the note." (*Fontenot*, at p. 272.) Thus, in order to state a viable claim, Thomas must allege facts showing the assignment changed his contractual obligations, interfered with his ability to pay his debt, or caused him to face foreclosure where, under the same circumstances, he otherwise would not have. (*Ibid.*) As Thomas has not alleged such facts or shown he could allege

13

such facts, he has not demonstrated his SAC did or could be amended to state a viable cause of action.

## IV

### *Substitution of Trustee*

#### 1

##### *Premature Substitution*

Thomas contends LaSalle's substitution of Quality as trustee was void because the substitution of trustee was executed before MERS assigned the trust deed and promissory note to LaSalle.  However, a substitution of trustee may be executed by a trust deed beneficiary or an authorized agent.  (Civ. Code, § 2934a, subd. (d).)  The fact LaSalle may not have been a trust deed beneficiary at the time it signed the substitution of trustee does not preclude the possibility LaSalle was an authorized agent of the beneficiary.  (See, e.g., *Wadhwa v. Aurora Loan Services, LLC* (E.D. Cal. Feb. 11, 2013, Civ. No. S-11-1784 KJM KJN) [2013 WL 528541, at ∗5].)

Moreover, the substitution of trustee did not become effective until it was recorded on November 21, 2007.  (Civ. Code, § 2934a, subd. (a)(1) [trust deed beneficiary or successor may substitute trustee by recording the substitution in the county where the secured property is located].)  As MERS assigned the trust deed and promissory note to LaSalle on August 24, 2007, and the assignment was recorded October 1, 2007, LaSalle had the authority to substitute the trustee well before the substitution became effective.

14

*Forged Acknowledgment*

Thomas alternatively contends the substitution of trustee was void because its notary acknowledgment was forged requiring its recording to be cancelled. Even assuming the substitution of trustee was procedurally defective in this manner, this is not sufficient by itself to state a cause of action by Thomas. Thomas must also state facts showing the defect impaired his rights in some way. (See, e.g., *U.S. Hertz, Inc. v. Niobrara Farms* (1974) 41 Cal.App.3d 68, 85.)

As previously discussed, "a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272.) As to Thomas, the substitution merely substituted one trustee for another without changing his contractual obligations. He does not allege that he was not in default, that the substitution of Quality as trustee interfered with his ability to pay his debt, or that LaSalle would have refrained from foreclosure under the circumstances. (*Ibid.*) Absent such allegations, he has not shown his SAC stated or could be amended to state a claim based on any improprieties in the substitution of trustee.

Thomas's reliance on this court's decision in *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868 (*Dimock*) is misplaced. In *Dimock*, we concluded a foreclosure sale conducted by the original trustee after another trustee had been substituted in was void because the substitution gave the second trustee the exclusive power under Civil Code section 2934a to conduct the sale. (*Dimock*, *supra*, at pp. 874-875.) In this case, Thomas

has not alleged or indicated he could allege that Quality conducted the foreclosure sale after another trustee was substituted in. Accordingly, *Dimock* has no application here.

V

*Tender Requirement*

Thomas contends the trial court wrongly determined he had to allege compliance with the tender rule to state of a cause of action in his SAC. "As a general rule, a debtor cannot set aside the foreclosure based on irregularities in the sale without also alleging tender of the amount of the secured debt. [Citations.] 'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' " (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512-513; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 111-114; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578-579.)

There are, however, many exceptions to the tender rule. These exceptions include: (1) when the borrower is attacking the validity of the underlying debt; (2) when the party attacking the foreclosure sale has a counterclaim against the beneficiary equal to or greater than the amount of the tender; (3) when the party attacking the foreclosure sale is not liable for the debt; and (4) when the party attacking the foreclosure sale is not relying on equity because the trustee's deed upon sale is void on its face. (*Shuster v. BAC Home Loans Servicing, LP*, *supra*, 211 Cal.App.4th at p. 512; *Lona v. Citibank, N.A.*, *supra*, 202 Cal.App.4th at pp. 112-113.) We need not determine whether an exception applies in

16

this case because we have upheld the trial court's decision on multiple other grounds. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1157, fn. 8.)

For the same reason, we also need not address Thomas's related claim that the trial court's application of the tender rule to the SAC violated the requirements in Code of Civil Procedure section 1008 for reconsidering prior decisions. We note, nonetheless, the improper reconsideration argument is not cognizable on appeal because Thomas did not raise it below. (*Greenwich S.F., LLC v. Wong*, *supra*, 190 Cal.App.4th at p. 767; *People ex rel. Dept. of Transportation v. Superior Court*, *supra*, 105 Cal.App.4th at p. 46.) We also note Thomas's SAC is far more factually detailed than his prior amended complaint and he filed the SAC almost two and a half years after he filed the amended complaint. In the interim, state and federal courts issued several new decisions in wrongful foreclosure cases. Thus, had Thomas asserted his improper reconsideration argument below, the trial court would have had little difficulty finding the requirements for reconsideration under Code of Civil Procedure section 1008 had been met.

DISPOSITION

The judgment is affirmed.  Respondent is awarded its appeal costs.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


IRION, J.